UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONNI VIOLA,

    Plaintiff,

v.                                                CASE NO.: 8:09-cv-1980-T-23AEP

COMPREHENSIVE HEALTH
MANAGEMENT, INC.,

    Defendant.
_____/

## **ORDER**

The plaintiff sues (Doc. 1) under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), for unpaid overtime compensation. The defendant moves (Doc. 29) for summary judgment and argues that the defendant properly classified the plaintiff as exempt from the FLSA's overtime requirement. The plaintiff responds (Doc. 35) in opposition.

### Background

The defendant, a subsidiary of WellCare Health Plans, Inc. (a health insurer for Medicaid and Medicare-eligible beneficiaries), hired Viola in October, 2007, to work in the defendant's Ocala, Florida office.[1] In the first year of her employment, Viola worked

---

[1] (Doc. 29); (Doc. 31-1 at 25); (Doc. 30-1 at 13); (Doc. 35-1).

as a "Community Event Coordinator" and in the second year she worked as a "Senior Community Outreach Associate."[2]

Each position entails the same responsibilities,[3] however, as a senior community outreach associate Viola received an increased salary and performed more work "populating a computer program with the different events."[4] A community event coordinator develops, plans, and implements "approved marketing strategy for events to interested candidates in the service area according to the prescribed rules and regulations . . . ."[5] The "essential functions" (as delineated in the written job description)[6] include:

> -marketing Medicare and Medicaid products to an interested, eligible candidate;
> -researching, organizing, and developing marketing enrollment events;
> -coordinating event activities;
> -networking with local associations, organizations, and clubs to provide additional marketing opportunities;
> -continually monitoring activities of health industry competitors and providing information to management.

A community event coordinator receives "[d]irect supervision through frequent meetings with [the] Regional Director and checks on completed work" but employs the "daily use of judgment" in rendering decisions. The essential functions of a senior community outreach associate include:

---

[2] (Doc. 29); (Doc. 31-1 at 21, 53, 54).

[3] (Doc. 35-1).

[4] (Doc. 29); (Doc. 31-1 at 97, 203); (Doc. 30-1 at 45, 53).

[5] (Doc. 29); (Doc. 30-1, Ex. 1).

[6] (Doc. 29); (Doc. 30-1, Ex. 1).

> -marketing WellCare through relationship building, event coordinating, community relations activities, and developing partnerships with healthcare providers and community associations;
> -implementing community programs to provide meaningful programs for community residents, strengthen corporate commitment to the community, build community coalitions, and promote WellCare;
> -developing relationships with community-based organizations to secure opportunities to promote WellCare;
> -serving as a community liaison for WellCare.

Viola performed the essential responsibilities of each position.[7] Specifically, Viola promoted WellCare (1) by volunteering with community and faith-based organizations, (2) serving on various boards of directors, (3) serving on chambers of commerce in various cities, (4) coordinating with her manager to both recommend and determine an organization to which to donate, (5) procuring donations on behalf of WellCare, (6) organizing events, (7) drafting quarterly reports on organizations and promotional activities, and (8) tracking the budget and inventory.[8] Viola never sold a WellCare product and lacked authority to enroll a potential patient.[9] Throughout her employment, Viola was the only coordinator or outreach associate in Ocala for the defendant's Medicare products.[10]

In determining which organization to contact, Viola networked and searched for organizations catering to senior citizens.[11] The restrictions imposed by federal law

---

[7] (Doc. 31-1 at 55-56, 201, 205-206); (Doc. 30-1, Exs. 1, 5, 6).

[8] (Doc. 31-1 at 54, 55, 64, 69, 71, 87, 88, 90); (Docs. 35-1, 35-2).

[9] (Doc. 31-1 at 83, Doc. 30-1 at 18).

[10] (Doc. 31-1 at 43).

[11] (Doc. 29, Doc. 31-1 at 56); (Doc. 30-1 at 18).

required Viola to formulate a strategy for marketing to certain groups.[12]  After Viola identified and initiated contact with an organization, Viola "would discuss [her] efforts with [her] boss, Mr. Van Valin, and he would advise [her] as to which group to follow up with for scheduling events."[13]  Although the defendant imposed on Viola no duty to research WellCare's competitors, Viola on a weekly basis reviewed periodicals to learn about other companies' marketing events.[14]  When meeting with organizations and promoting WellCare in the community, Viola primarily worked alone.[15]  However, both sales representatives and consultants from Wellcare attended events organized by Viola, and Viola required her supervisor's approval in order to "finalize" an event.[16]  Viola could negotiate with a venue the price for an event within a fixed budget of $300,[17] but a deviation from the budget required a supervisor's approval.[18]  Viola's responsibilities also included preparing an annual marketing plan, which Viola composed by "filling in the blanks" of a rough draft provided by the defendant's corporate office.[19]

---

[12] (Doc. 29, Doc. 30-1 at 18-20).

[13] (Docs. 35-1, 35-2).

[14] (Docs. 35, 35-2).

[15]  (Doc. 31-1 at 93); (Doc. 29).

[16] (Doc. 35-3); (Doc. 35-2).

[17] (Doc. 35-1); (Doc. 31-1 at 75).

[18] (Doc. 29, Doc. 31-1 at 75, 84-86).

[19] (Doc. 35-2).

As compensation for her efforts, Viola earned an annual salary of $45,000.00 as a community event coordinator and an annual salary of $57,000.00 as a senior community outreach associate.[20] Although the defendant promised Viola a "guaranteed commission" of $1,800.00 a month for the first three months of her employment,[21] Viola asserts that she never earned a commission.[22] The defendant provided Viola a cellular telephone, access to a corporate credit card, reimbursement for travel expenses, and a check (upon request) to pay for an event.[23] Viola had neither a regular work schedule nor a duty to maintain a record of her hours.[24]

## Discussion

### 1. Standard of Review

A claim merits summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The non-moving party receives a favorable construction of the evidence and the benefit of each available, reasonable inference. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). The movant must establish the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323, and if successful, the burden of production shifts to the non-moving

---

[20] (Doc. 31-1, Exs. 2, 4).

[21] (Doc. 31-1, Ex. 2).

[22] (Doc. 35-1).

[23] (Doc. 31-1 at 40, 46, 49, 76, 133).

[24] (Doc. 31-1 at 109, 114, 126).

party, who must offer "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party must present sufficient evidence, based "on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

*2. The FLSA's Administrative Exemption*

The FLSA establishes minimum wage and overtime standards for certain employees.  29 U.S.C. §§ 206, 207; Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1231-32 (M.D. Fla. 2010).  However, the FLSA exempts from each requirement an employee working in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213.  The Secretary of the Department of Labor defines an "employee employed in a bona fide administrative capacity" as any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;[25]
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  Because the employer bears the burden of proving the exemption, each exemption from the overtime requirement is construed narrowly against the employer.  Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004); Rock v. Ray Anthony Intern., LLC, 380 Fed. App'x 875, 877 (11th Cir. 2010).

---

[25] The parties agree that the defendant compensated Viola at a rate of not less than $455 a week.

- 6 -

    a. Whether Viola's Primary Duty Was the Performance of Office or Non-Manual Work Directly Related to the Management or General Business Operations of the Employer

The phrase "directly related to the management or general business operations" describes the type of work the employee performs. 29 C.F.R. § 201(a). To satisfy this requirement, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The regulation describes this type of work as:

> includ[ing], but . . . not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).[26] "'[T]he administrative operations of the business include the work of employees 'servicing' the business, such as, for example, 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.'" Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer

---

[26] See Roe-Midgett v. CC Services, Inc., 512 F.3d 865, 868, 871-72 (7th Cir. 2008) (finding that a claims adjuster, with settlement authority of up to $12,000, satisfied the "directly related" requirement by working "at the front lines" of the defendant's operation and by spending most hours "in the field" representing "the face" of the defendant.); Jackson v. Alpharma, Inc., 2010 WL 2869530, *3 (D. N.J. 2010) (finding that pharmaceutical sales representatives engaged in marketing and promoting sales of pharmaceuticals performed work directly related the defendant's general business operations); Copas v. East Bay Municipal Utility Dist., 61 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) (finding that community outreach and public awareness qualified as part of a municipal utility district's general business operations).

- 7 -

Employees, 69 Fed. Reg. 22122, 22138 (Apr. 23, 2004).  An exempt administrative employee includes "not only [an employee] who participate[s] in the formulation of management policies or in the operation of the business as a whole" but an employee who "'either carr[ies] out major assignments in conducting the operations of the business[] or whose work affects business operations to a substantial degree, even though the[] [employee's] assignments are tasks related to the operation of a particular segment of the business.'"  69 Fed. Reg. at 22138.

The defendant argues that Viola's employment related directly to the defendant's business because (1) Viola was "involved in developing, planning[,] and implementing strategies designed to promote the WellCare brand within the Ocala market"; (2) Viola's job "required her to be active in the community and to network"; and (3) Viola was "very much the 'face' of WellCare in the Ocala market."  Viola argues that her work was not directly related either to the management or to the general business operations of the defendant and that, at most, the defendant showed that Viola's job required her to market the defendant's products.  In this instance, however, both Viola's written job description and her daily activity consisted of marketing, public outreach, and promoting the defendant's product to every eligible beneficiary in the Ocala market.  Although Viola executed no sale of the defendant's product, Viola vigorously promoted the sale of the product and undoubtedly engaged in the "servicing" of the defendant's Medicare business.  Viola was the only employee leading the defendant's community outreach and marketing efforts in Ocala and was, throughout her two years of employment, the "face" of the business.  Viola's work undoubtedly affected to a substantial degree the

defendant's business in the Ocala market, even though Viola's tasks were limited to only a certain segment of the defendant's business. Construing the exemption narrowly, Viola primarily performed "office or non-manual work directly related to the management or general business operations of the employer . . . ."

### a. Whether Viola's Primary Duty Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a). The regulation describes several factors to consider in determining whether an employee exercises the requisite level of discretion as to matters of significance, which factors include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).  "The ultimate question is whether the employee has the ability 'to make an independent choice, free from immediate direction or supervision.'"  <u>Rock</u>, 380 Fed. App'x. 875, 879 (11th Cir. 2010).  The employee need not operate "free from oversight," but the employee's responsibility "must involve 'more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  380 Fed. App'x at 879.

The defendant argues that Viola exercised the requisite level of discretion as to matters of significance because Viola worked alone in the field without either leads or formal instruction on whom to contact in the community.   Viola chose which organizations to contact, composed reports and business plans to "identify targets and generate ideas on how to grow the business," negotiated (within a limit) the cost of an event, designed marketing and promotional events, and worked with management to determine the allocation of donations.  In response, Viola argues that Viola lacked "authority to formulate, affect, interpret, or implement management policies or operating practices, carry out major assignments in conducting the operations of the business, or perform[] work that affected business operations to a substantial degree."  In other words, Viola "is not arguing that she did not make decisions or have the ability to use discretion.  [Viola] is simply clarifying that she did not exercise discretion <u>in matters of significance</u>." (emphasis in original)

In this instance, Viola's position required Viola to exercise her judgment on a daily basis within certain limits.  Viola independently determined which organizations to contact and subsequently relied on the advice of her supervisor in deciding which

- 10 -

organization to further pursue. Although Viola lacked authority to deviate from a $300 budget for each event, Viola could independently negotiate a price within the pre-determined limit. Viola coordinated with and advised management on matters including donations, budgets, and plans for marketing in Ocala. Free from immediate supervision (albeit subject to final, supervisory approval), Viola organized events and promoted the defendant's product. Viola engaged with local faith-based and community organizations and became the defendant's "face" within many organizations throughout the Ocala area, including local chambers of commerce. Although not free from oversight, Viola's work involved significantly more than the application of a prescribed procedure or specific standard and affected to a substantial degree a particular segment of the defendant's business. Thus, Viola's work undoubtedly involved the exercise of independent judgment in matters of significance.

## Conclusion

Accordingly, because the defendant properly classified Viola as exempt under the FLSA's administrative exemption, the defendant's motion (Doc. 29) for summary judgment is **GRANTED**. The Clerk is directed to (1) enter judgment in favor of the defendant and against the plaintiff, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on December 29, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE